UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA A. V.,[1]<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 2:20-cv-03228-AFM<br><br>**MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On March 8, 2017, Plaintiff applied for disability insurance benefits, alleging disability since July 22, 2014. Plaintiff's application was denied initially and on reconsideration. (Administrative Record ["AR"] 410-414, 417-421.) A hearing took

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

place on November 29, 2018 before an Administrative Law Judge ("ALJ"). Plaintiff and a vocational expert ("VE") testified at the hearing. (AR 343-374.)

In a decision dated March 22, 2019, the ALJ found that Plaintiff suffered from the following severe impairments: cervical and lumbar degenerative disc disease; bilateral degenerative joint disease of the knees, status post partial right knee meniscectomy; status post hysteroscopy, endometrial ablation, and bladder sling for menorrhagia and urinary incontinence; migraine headaches; and obesity. (AR 26.) After finding that Plaintiff's impairments did not meet or equal a listed impairment, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a light work with the following restrictions: Plaintiff can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; can sit up to six hours and stand and/or walk up to four hours in an eight-hour workday; requires a sit/stand option with no more than two changes of position per hour; no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, and scaffolds; and no concentrated exposure to unprotected heights and dangerous machinery. (AR 27.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could not perform her past relevant work, but could perform work existing in significant numbers in the national economy. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 34-36.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-5), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether the ALJ properly rejected Plaintiff's subjective complaints.
2. Whether the ALJ properly considered the medical evidence.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In the social security context, the substantial evidence threshold is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

Plaintiff contends that the ALJ assigned "too much weight" to non-treating doctors; overlooked or misconstrued medical evidence; and failed to apply the factors set forth in 20 C.F.R. 404.1527 in assessing the medical opinions. (ECF 18 at 6-12.)

**A. Relevant Law**

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). If a treating physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted).[2]

### B. The ALJ's Decision

With respect to Plaintiff's knee and back impairments,[3] the ALJ began by noting that in July 2014, Plaintiff complained of right knee pain resulting from a work injury. She was examined by Gregg Kasting, M.D. Plaintiff reported that she was still working full-time and denied weakness, locking, numbness, or tingling in the knee. Dr. Kasting's physical examination revealed moderate swelling of the right knee, joint effusion, restricted range of motion and positive abduction/adduction stress testing. He diagnosed Plaintiff with a probable strain/tear of MCL with possible meniscus injury. Dr. Kasting advised Plaintiff to wear a knee brace and use crutches. She was referred for an MRI. (AR 632, 634-638, 646, 663, 665.) She was also referred for physical therapy. (AR 646, 657-661, 662, 669-671, 680.)

A July 31, 2014 MRI showed mild degenerative changes, moderate chondromalacia, and significant articular cartilage loss, but no evidence of a tear or other significant abnormality. (AR 679, 1404-1405.)

Dr. Kasting restricted Plaintiff to returning to modified work as follows: "patient should work in a sit down job" with no standing, walking, overhead work, stooping, bending, kneeling, squatting, or lifting. In addition, Dr. Kasting noted that Plaintiff would need to use crutches. (AR 632, 638, 665.) In discussing Dr. Kasting's work restrictions, the ALJ stated that Plaintiff "could perform at least sedentary work." (AR 29, citing AR 632, 638.) According to the ALJ, the August 2014 records

---

[2] The rules for the evaluation of medical evidence at the administrative level have been revised for disability applications which were filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Plaintiff filed her application on March 8, 2017, the revised regulations do not apply.

[3] Because the Court's decision focuses on the ALJ's consideration of Plaintiff's knee and back impairments, its discussion is limited to those impairments.

indicated that Plaintiff's right knee pain had improved and she was able to perform light duty work. (AR 29.)

As the ALJ noted, in July 2014, Plaintiff obtained treatment for right knee pain at Los Robles Regional Medical Center. A right knee x-ray was negative. (AR 1438-1447.) Physical examination revealed full range of motion and no swelling in the right knee, no deformity, and intact neurovascularity. (AR 1439.) An MRI conducted in December 2014 showed moderate chondral thinning, but no evidence of meniscal tear or significant degeneration. (AR 1401-1402.)

The ALJ found the reports from Dr. Kasting and Los Robles Regional Medical Center to be persuasive and consistent with the mild findings throughout the record, including the MRI scans. He also found them consistent with Plaintiff's positive response to conservative treatment and Dr. Kasting's conclusion that Plaintiff could return to "light duty work." (AR 29.)

Next, the ALJ summarized the records from orthopedic surgeon Hrair Darakjian, M.D., who examined Plaintiff in April 2015. Dr. Darakjian observed that Plaintiff had received "conservative care including physical therapy and steroid injection" for her right knee pain. (AR 680.) Plaintiff reported that she had recently begun experiencing left knee pain. She reported that she was taking ibuprofen and Norco for pain relief. Dr. Darakjian's physical examination revealed patellofemoral tenderness, but no other significant findings. Plaintiff had full range of motion, no neurological deficient, and no joint deformity. She had normal motor strength, reflexes, and sensation. McMurray signs were negative; posterior drawer sign and Lachman maneuver were negative; and Plaintiff's right knee was stable to anterior and posterior medial and lateral stressing. Dr. Darakjian diagnosed early right knee osteoarthritis without evidence of internal derangement. He advised treatment with three hyaluronic injections and weight loss and opined that surgery was not indicated. Dr. Darakjian did not assess any functional limitations. (AR 680-687.)

The ALJ found Dr. Darakjian's findings "convincing" because they were consistent with the overall modest physical findings throughout the record as well as the mild findings in the MRI scan. (AR 30.)

Next, the ALJ discussed the treatment notes from Andrzej Bulczyniski, M.D., who treated Plaintiff from August 2014 through June 2015. (AR 688-791.) Dr. Bulczynski diagnosed Plaintiff with right knee degenerative joint disease. The ALJ noted that Dr. Bulczynski's physical examination revealed no significant findings. Specifically, the ALJ pointed out that Plaintiff had good range of motion and muscle strength throughout, and no neurological deficits. The ALJ characterized Dr. Bulczynski as advising "conservative treatment," which consisted of a series of three hyaluronic injections. (AR 30, citing AR 688-696, 700-703, 706-709, 712-715, 718-721, 724-727, 730-733, 736-739, 746-749, 752-755, 767-770, 773-776, 782-786.)

Dr. Bulczynski's last examination of Plaintiff took place in June 2015. Like the other examinations conducted by Dr. Bulczynski, Plaintiff's physical examination was essentially normal other than mild to moderate tenderness to palpation of the right knee. (AR 693-694.) Dr. Bulczynski noted that the most recent MRI from December 2014 revealed no evidence of meniscus tear, moderate chondral thinning; significant chondral loss of the lateral patellar facet and areas of full-thickness fissuring. He diagnosed Plaintiff with extensive degenerative joint disease in all three compartments of the right knee; shallow trochlea; and effusion. (AR 694.)

In each of his reports, Dr. Bulczynski indicated that Plaintiff was able to perform "limited standing or walking. No stooping, bending, kneeling and squatting" and until April 2015, he additionally restricted Plaintiff to a "sit-down job." (*See* AR 698, 705, 711, 717, 723, 729, 735, 751, 772, 778, 786, 788.) The ALJ addressed these records, characterizing Dr. Bulczynski's opinion as finding Plaintiff had a "limited

ability" to stand and walk; was precluded from stooping, bending, kneeling, and squatting; and could perform sedentary work. (AR 30.)[4]

The ALJ found Dr. Bulczynski's examinations of Plaintiff to be consistent with the overall mild physical findings in the record. However, the ALJ found Dr. Bulczynski's opinion regarding functional limitations "too restrictive." The ALJ noted that most medical sources did not assess any functional limitations and determined that the minimal knee findings did not support a restriction to sedentary work. (AR 30.)

In November 2015, Plaintiff was examined by Mark Hestrin, M.D. A preoperative diagnosis in November 2015, indicated that Plaintiff suffered from right knee internal derangement. (AR 797-799.) Thereafter, on November 23, 2015, Richard Scheinberg, M.D., performed right knee arthroscopic chondroplasty, partial lateral meniscectomy, chondroplasty of the patella, and synovectomy. Plaintiff did not have significant postoperative complications. (AR 800-803.)

Next, the ALJ addressed medical records from orthopedic surgeon Yuri Falkinstein, M.D. Dr. Falkinstein conducted three medical evaluations of Plaintiff between October 2015 and September 2016. (AR 815-926.) Plaintiff complained of bilateral knee pain. Examinations revealed a normal gait. Plaintiff was moderately obese, weighing 220 pounds at 5'4" tall. Plaintiff had normal range of motion in the spine, good muscle strength throughout, and no neurological deficits. Plaintiff's sensation and reflexes were intact. Range of motion in the knee was slightly restricted. X-rays showed mild medial compartment joint space narrowing. In addition to numerous other medical records, Dr. Falkinstein reviewed the most recent MRIs performed in June 2016: an MRI of Plaintiff's lumbar spine which showed minor degenerative spondylosis of the lower lumbar spine with no significant disc

---

[4] The ALJ referred to Dr. Bulczynski's opinion as reflecting a "temporary limitations." (AR 30.) However, in his final report from June 2015, Dr. Bulczynski stated that Plaintiff was able to return to work with limited standing or walking, no stooping, bending, kneeling, or squatting, and added that "[t]hese should be considered permanent work restrictions." (AR 695.)

7

protrusions or evidence of canal stenosis and an MRI of Plaintiff's left knee which showed moderate myxoid degenerative changes and no significant meniscal-ligamentous pathology. (AR 816.) Dr. Falkinstein advised conservative treatment, including short courses of physical therapy and viscosupplementation injections. (AR 841.) In Dr. Falkinstein's opinion, Plaintiff was permanently restricted from lifting more than 20 pounds, repetitive bending and stooping, walking on uneven terrain, kneeling, and squatting. (AR 887.)

The ALJ found Dr. Falkinstein's opinion persuasive, considering the mild knee findings and the recommended conservative treatment for pain relief, all of which were consistent with the weight of the evidence. According to the ALJ, Dr. Falkinstein's functional limitations were consistent with the ALJ's RFC assessment. (AR 31.)

The ALJ also addressed treatment notes of orthopedist Dr. Scheinberg, who treated Plaintiff from September 2015 to August 2018. The ALJ characterized Dr. Scheinberg's physical examinations of Plaintiff as "consistently within normal limits." (AR 322, citing AR 1334-1335, 1339, 1342, 1346, 1348, 1350, 1352, 1354, 1356, 1359, 1362, 1364, 1368, 1371, 1375; 1448, 1451, 1454, 1457, 1461-1462, 1469-1470, 1476, 1480, 1489-1490; 1492.)[5]

In October 2015, Dr. Scheinberg temporarily limited Plaintiff to sedentary work with a sit/stand option, and precluded her from pushing, pulling, and lifting. (AR 1373.) Thereafter, on November 23, 2015, Dr. Scheinberg performed right knee arthroscopic chondroplasty, partial lateral meniscectomy, and synovectomy. (AR 800-803, 1366.)

MRIs of Plaintiff's right knee conducted in April 2016 and September 2017 showed stable moderate chondromalacia, mild degenerative osteoarthritis, and

---

[5] The ALJ cites both Exhibit 26F and Exhibit 27F of the Administrative Record. Because those two exhibits are identical – consisting of the same 80 pages of medical records (*see* AR 1448-1527 & 1528-1607) – the Court cites only one.

bursitis. (AR 1383, 1420.) A June 2016 MRI of Plaintiff's left knee was unremarkable, revealing only minor degenerative changes. (AR 1380, 1424.) A June 2016 MRI scan of Plaintiff's lumbar spine showed mild degenerative spondylosis at L4-5 and L5-S1, and no other abnormalities. (AR 1373, 1425.)

In July 2017, Plaintiff underwent a course of five extracorporeal shockwave treatments for lumbar pain. (AR 1498-1526.)

In September 2017, an MRI of Plaintiff's right knee revealed grade 3-4 chondromalacia, but Dr. Scheinberg observed that the criteria were not met for right knee arthroplasty. Instead, he advised pain relief injections. (AR 1485-1486.)

In September 2018, Dr. Scheinberg completed a physical medical source statement. He opined that due to bilateral knee and lumbar pain, Plaintiff was able to sit for four hours in an eight-hour workday and stand/walk for four hours in an eight hour-workday; needed to walk for 10-15 minutes every hour; would need to take unscheduled breaks two to three times a week; if she had a sedentary job, Plaintiff would need to elevate her legs 30 to 40 percent of the time; and that her symptoms would interfere with attention and concentration necessary to perform simple work tasks 25% or more during a workday. (AR 1608-1612.)

The ALJ rejected Dr. Scheinberg's opinion – which he summarized as concluding that Plaintiff "could not perform even sedentary work due to knee and lumbar pain." (AR 32.) In discounting Dr. Scheinberg's opinion, the ALJ explained that that Dr. Scheinberg "checked boxes on a form and did not include a narrative discussion of objective findings to support the extreme conclusion." (AR 32.) In addition, the ALJ explained that Dr. Scheinberg's findings on physical examinations as well as the MRI scans showed only mild knee and lumbar findings which did not support his severe functional limitations. (AR 32.)

The ALJ next noted records from Acuhope Center from September and October 2017 which were "within normal limits." According to the ALJ, the records

showed that Plaintiff "responded well to acupuncture treatment for pain relief." (AR 33, citing AR 1427, 1434.)

The ALJ discussed the September 2018 medical source statement from Genevieve Moya, M.D. Dr. Moya indicated that she had treated Plaintiff since January 2010 for cervical and lumbar pain and for migraine headaches. Dr. Moya opined that Plaintiff was unable to perform even sedentary work. (AR 33, citing AR 1394-1398.) The ALJ rejected Dr. Moya's opinion because she "checked boxes that indicated extreme functional limitation without any significant narrative discussion of clinical findings that would support the limitations." (AR 33.)

Finally, the ALJ noted the opinions of State agency medical consultants from June and September 2017, who diagnosed Plaintiff with spine disorder, major joint dysfunction, migraine headaches, and osteoarthrosis. (*See* AR 375-389, 391-408.) The State agency physicians found Plaintiff did not have a severe mental disorder. (*See* AR 397-399.) The ALJ indicated that he adopted the most restrictive physical limitations assessed by the State agency physicians. (AR 33.)

### C. Analysis

Plaintiff argues that the ALJ erred in considering Dr. Scheinberg's opinion. As set forth above, the ALJ rejected Dr. Scheinberg's opinion for two reasons: (1) it was provided in a check-box form without narrative discussion; and (2) Dr. Scheinberg's treatment records revealed physical examinations that were "consistently within normal limits" and contained "mild knee and lumbar findings." (AR 32.)

The Commissioner points out that an ALJ may reject a physician's opinion when it consists of "check-off reports" that do not contain an explanation of the bases for their conclusions. (ECF 21 at 7 citing *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Nevertheless, the Ninth Circuit has made clear that an ALJ is "not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form,

were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." *Trevizo*, 871 F.3d at 683 n.4. Instead, when a physician's opinions are expressed in check-box form, they are still entitled to weight when they are "based on significant experience with [a claimant] and supported by numerous records ...." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (footnote omitted).

Here, the ALJ's analysis of the format of Dr. Scheinberg's opinion failed to recognize that those opinions were gleaned from his more than three-year long treating relationship with Plaintiff involving impairments that the ALJ found independently severe and they were supported by numerous records. Moreover, although he cited Dr. Scheinberg's treatment records, the ALJ failed to address the positive clinical findings contained in those records that might support Dr. Scheinberg's opinion.

The ALJ characterized Dr. Scheinberg's notes as revealing consistently normal examinations and no more than mild findings. An ALJ may give less weight to the opinion of a physician when an ALJ finds inconsistencies with the physician's records, and the ALJ explains why the opinion "did not mesh with [his] objective data or history." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Similarly, inconsistency with the overall record constitutes a legitimate reason for discounting a physician's opinion. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-603 (9th Cir. 1999). However, to reject an opinion as inconsistent with the treatment notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required.").

To the extent that the ALJ here explained finding Dr. Scheinberg's opinions unsupported, that explanation is faulty. While some of the findings in treatment notes

cited by the ALJ may be deemed "within normal limits," many are not. Rather, Dr. Scheinberg's records reveal numerous positive clinical findings related to both Plaintiff's knees and her back – including positive McMurray's, effusion, positive straight leg raising, crepitance, multiple tender trigger points, diminished sensation, tenderness of both knees and lumbar spine, and patellofemoral compression pain. (*See*, *e.g.*, AR 1448, 1451, 1454, 1457, 1461-1462, 1469-1470, 1476-1477, 1480, 1485, 1490, 1492-1493.)[6]

In sum, the Court concludes that the ALJ failed to properly evaluate the supportability of Dr. Scheinberg's opinion, and his reasons for finding that opinion unpersuasive are not supported by substantial evidence. Because crediting some or all of those opinions would have required inclusion of additional limitations in the residual functional capacity hypothetical presented to the VE, *see Ghanim*, 763 F.3d at 1166, the Court cannot conclude that the ALJ's error was harmless.[7]

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first

---

[6] Not only did the ALJ fail to discuss positive findings that might support either Dr. Scheinberg's opinion or Plaintiff's subjective allegations, but the ALJ's decision also includes other misstatements of the record. For example, the decision states that the records showed that Plaintiff "responded well to acupuncture treatment for pain relief." (AR 33, citing AR 1427, 1434.) To the contrary, the notes state that five treatments were provided and Plaintiff's pain symptom and range of motion had not improved with treatments. (AR 1427.) Similarly, when discussing Plaintiff's physical therapy results, the ALJ states that Plaintiff's pain improved (AR 29), when the record actually states that Plaintiff's condition had "worsened." (AR 663.)

[7] Because reversal is warranted based upon the ALJ's error in considering Dr. Scheinberg's opinions, the Court declines to address Plaintiff's remaining contentions. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). It is not the Court's intent to limit the scope of the remand.

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 5/27/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE